```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
  MONA A. MORSY,

                    Plaintiff,            MEMORANDUM & ORDER
                                            20-CV-3960(EK)
              -against-

  COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

    Plaintiff Mona Morsy challenges the Social Security Administration's denial of her claim for supplemental security benefits.  Before the Court are the parties' cross-motions for judgment on the pleadings.  For the following reasons, I grant the Commissioner's motion and deny Morsy's.

### I.  Background

**A.  Procedural Background**

    In July 2018, Morsy applied for supplemental security income ("SSI"), alleging a disability onset date of January 1, 2008.  Administrative Tr. ("Tr.") 10, ECF No. 9.  The agency denied her claim.  *Id.*  On September 12, 2019, an administrative law judge ("ALJ") held a hearing.  *Id.*  The ALJ concluded that Morsy was not disabled and therefore not entitled to SSI benefits.  *Id.* at 20.  The Appeals Council denied Morsy's

request for review of the ALJ's decision, rendering it final. *Id.* at 1. Morsy timely sought review in this Court.

**B. The ALJ's Disability Evaluation**

To be eligible for SSI based on "disability," a claimant must show she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 416.920.

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 416.920(b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 416.920(d).

2

Here, the ALJ determined that Morsy had not engaged in substantial gainful activity since her alleged onset date. Tr. 12. The ALJ also determined that Morsy suffered from the "severe impairments" of left peroneal neuropathy,[1] lumber spine degenerative disc disease, bilateral carpal tunnel syndrome, and history of right ankle fracture.[2] *Id.* However, the ALJ also determined that none of these severe impairments rose to the level of a Listed Impairment. *Id.* at 14.

When an ALJ finds that the claimant's severe impairments do not meet the requirements of the Listings, she must determine the claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R. § 416.920(e). The ALJ concluded here that Morsy had the RFC to perform "sedentary work" with limitations. Tr. 14. Those limitations included that the work must allow the use of "a cane to walk away from the work station," be "simple work that is not fast paced," and permit changing positions every thirty minutes for one to two minutes in the immediate vicinity of the work station. Tr. 14–15.

---

[1] The peroneal nerve, located in the leg, is a branch of the sciatic nerve.

[2] Morsy testified that she fractured her right ankle in 2015 and continues to experience ankle pain as a result. Her consultative examination revealed swelling and decreased range of motion in that ankle. *Id.* at 15–17.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 416.920(f). Here, the ALJ found that Morsy could not perform her past work as a sandwich maker. Tr. 19. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 416.920(g). The ALJ determined that Morsy could perform such jobs, including as a dowel inspector,[3] plastic design applier,[4] and buckler and lacer.[5] Tr. 20. Given that conclusion, the ALJ concluded that Morsy was not disabled. *Id.*

## II.  Standard of Review

A district court has jurisdiction to review the Commissioner's final judgment denying an application for disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the

---

[3] According to the SSA's Dictionary of Occupational Titles, a dowel sorter "[i]nspects dowel pins for flaws, such as square ends, knots, or splits, and discards defective dowels." *669.687-014 Dowel Inspector*, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 686074.

[4] The Dictionary of Occupational Titles reports that a plastic design applier "[f]eeds and off bears rotating machine (merry-go-round) that fuses plastic designs to shoe uppers: Aligns shoe part and design with guides in machine bed. Removes finished article from machine and stacks shoe uppers in bins." *690.686-046 Plastic-design Applier*, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 678634.

[5] The Dictionary of Occupational Titles reports that a "buckler and lacer" "[t]hreads laces through eyelets and buckles straps on finished shoes in preparation for shipping." *788.687-022 Buckler and Lacer*, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 681176.

Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[6]

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### III. Discussion

Morsy raises three arguments on appeal. First, she argues that the ALJ failed to provide legally sufficient reasons for rejecting her testimony about the severity of her symptoms. Mem. of L. in Supp. of Pl.'s Cross-Mot. for J. on the Pleadings ("Pl. Mem.") 19-21, ECF No. 17-1. Second, Morsy argues that the ALJ's RFC determination failed to account for limitations on her ability to remain standing or walking, as opposed to sleeping or lying down. *Id.* at 21-22. Finally, she argues that the ALJ should have sought additional records from one of Morsy's treating physicians. *Id.* at 22.

---

[6] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

**A.  Evaluation of Morsy's Subjective Complaints of Symptoms**

Morsy argues that the ALJ erred in his analysis of her subjective description of her symptoms.  *Id.* at 19-21.  Morsy testified to experiencing, among other things, "10 out of 10" level pain, alleviated only when she is "relaxing"; stomach issues; difficulty concentrating; and an inability to perform basic mathematics.  Tr. 18, 44, 47, 56.  The ALJ determined that Morsy's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent with the evidence of record."  *Id.* at 17.  Morsy levels two objections to this conclusion.

   1.  Side Effects of Morsy's Medications

*First*, Morsy argues that the ALJ failed to "discuss the type, dosage, effectiveness, and side effects of any medications taken to alleviate [Morsy's] pain."  Pl. Mem. 20.  She argues that this omission "is critical because [Morsy's] medical record shows that she was taking approximately 20 prescribed medications for her medical conditions" and posits that it is "likely that there are interactions between the medications and side effects."  *Id.* (citing Tr. 386).  However, the only side effect or interaction Morsy asserted at her hearing or in her briefs is an upset stomach from her pain medication.  *Id.* at 7; Tr. 47.

6

"When evaluating the intensity, persistence and limiting effects of symptoms, the Commissioner's regulations require consideration of seven specific, *objective* factors that naturally support or impugn *subjective* testimony of disabling pain and other symptoms." *Rucker v. Berryhill*, No. 16-CV-1388, 2018 WL 1320660, at *10 (E.D.N.Y. Mar. 14, 2018). Those factors include "the type, dosage, effectiveness, and side effects of medication taken to alleviate pain or other symptoms." *Id.* at *11. But even if not every factor is discussed, "remand is not required where the evidence of record permits [the court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).

Here, the ALJ noted that Morsy "takes pain medication, which gives her stomach aches." Tr. 15. It is apparent that the ALJ did not further discuss Morsy's side effects because Morsy expressly denied side effects to her treating physicians. On at least two occasions, Morsy attended appointments specifically for the purpose of "medication evaluation." Tr. 397, 414. Both times, the appointment record listed exactly 20 active medications. *Id.* At both appointments, Morsy stated that she had consistently taken the prescribed medications but specifically denied any side effects. *Id.* "This Court is hard-pressed to find that the ALJ erred in crediting plaintiff's own

7

repeated denials of any" side effects. *Thomas v. Berryhill*, No. 15-CV-012, 2017 WL 4053819, at *4 (W.D.N.Y. Sept. 13, 2017).

Morsy's other treatment records also do not indicate that she complained of side effects to her physicians. *See, e.g.*, Tr. 390, 393 (noting Morsy was "edcuated [sic] about drug interactions" but reporting neither interactions nor side effects). And during the ALJ hearing, Morsy's only testimony concerning side effects was that her medication "affect[ed] [her] stomach" — the complaint that the ALJ noted in his decision. *Id.* at 15, 47.

In sum, the record does not indicate any significant side effects; on the contrary, it indicates the absence thereof. The ALJ accordingly did not err in declining to discuss Morsy's medications and side effects.

2. Morsy's Use of a Cane: Implications Regarding Hand Pain

*Second*, Morsy argues that the ALJ mischaracterized the record when she opined — not expressly, but "[b]y inference" — that Morsy's complaints of hand pain are undermined by her use of a cane. Pl. Mem. 19.

The ALJ noted that Morsy "report[ed] significant hand pain that prevents her from dressing herself." Tr. 17. At the same time, however, the ALJ noted that Morsy "also testified that she uses a cane at all times with her hands," and reported

8

"hand pain and swelling as a result" of such use. *Id.* Morsy argues that the ALJ "failed to add that the SSA consultative physician . . . stated that the cane is medically necessary primarily for balance." Pl. Mem. 19. As a result, she argues, "[b]y inference . . . , the ALJ is stating that [Morsy] does not have pain in her hand when she uses the cane." *Id.*

The ALJ did not mischaracterize the record in his discussion of Morsy's cane use. First, Morsy claims that the inference in question arose from the ALJ's omission to state that Morsy required a cane primarily for balance, but the ALJ did not actually make that omission. The ALJ noted that Morsy used a cane "for ambulation," even though it was not prescribed. Tr. 17. Second, the ALJ noted Morsy's cane use in support of the conclusion that Morsy's subjective statements of symptoms were inconsistent with the evidence of record. The ALJ is entitled to weigh conflicting evidence in making such determinations. *See Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) ("[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution . . . ."). Here, Morsy testified that her pain rates, on an average day, a 10 out of 10 and is alleviated only when she is "relaxing." Tr. 18, 47. The ALJ found this to be inconsistent not only with the regular use of a cane, but also

9

with Morsy's treatment history: her physicians recommended "only conservative treatment," Tr. 18; and Morsy discontinued physical therapy "after reporting significant improvement while in therapy." *Id.* This finding was supported by substantial evidence.

**B. The ALJ's RFC Hypotheticals**

At the hearing, the ALJ asked the vocational expert:

> Let's assume we have a hypothetical individual, vocationally situated as is [Morsy.] Let's assume that that individual can perform the functions of sedentary work except, occasional climbing stairs, balancing, stooping, kneeling and crouching. No crawling or climbing ladders, ropes and scaffolds. No exposure to obvious hazards. And simple work that is not fast-paced, meaning no work where the pace of work is directed by an assembly line, conveyor belt or similar. Would such a person be able to perform the claimant's past relevant work? . . . Is there other work that such an individual would be able to perform?

Tr. 65-66. The ALJ then added additional functional limitations to this hypothetical, such as needing a cane to walk away from the workstation or to stand, and asked if those limitations would disqualify the hypothetical individual from any jobs. *Id.* at 66-69. Morsy argues that these hypotheticals were flawed because the ALJ did not include that the individual would need to sleep, on average, three hours during the day and lie down for another two to three hours per day to alleviate pain. Pl. Mem. 22. But the ALJ did not need to include these limitations,

10

because the record more than sufficiently supports the ALJ's conclusion that Morsy is not subject to such limitations.

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Where this RFC determination "is supported by substantial evidence," an ALJ may rely on a vocational expert's testimony in response to "hypothetical questions that track[] th[at] RFC determination." *Salinovich v. Comm'r of Soc. Sec. Admin.*, 783 F. App'x 67, 69 (2d Cir. 2019).

Here, the ALJ asked hypothetical questions that tracked her ultimate RFC determination. *See* Tr. 14–19; *Salinovich*, 783 F. App'x at 69. That determination did not include a need for three hours of sleep during the daytime and two to three hours reclining. *See* Tr. 14–19. Substantial evidence supported excluding those limitations. Notably, the ALJ found Morsy's testimony about her symptoms to be inconsistent with the evidence of record, including her own choice not to continue attending physical therapy. Tr. 18. Thus, upon "weighing the credibility of [Morsy's testimony] in

11

light of the other evidence in the record," the ALJ was entitled to reject Morsy's assertion that she must sleep or lie down for six hours during the day. *See Genier*, 606 F.3d at 49.

## C. Duty to Supplement the Record

Morsy argues that the ALJ failed to fulfill her duty to develop the record. Specifically, she argues that the ALJ should have made more substantial efforts to obtain "treatment records and a medical source statement from Dr. [Ashaf] Elshafei," one of Morsy's treating physicians. Pl. Mem. 22. Morsy notes that the record includes a letter from Dr. Elshafei stating that he treats Morsy and that she suffers from "Major Depressive Disorder along with Anxiety Disorder," Tr. 436, but that this letter is not accompanied by treatment records. Pl. Mem. 22. Morsy does not indicate what she expects Dr. Elshafei's records would show, or what gap in the record they would have filled.

"[An] ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran*, 569 F.3d at 112. Here, however, the ALJ did not err in failing to obtain additional records from Dr. Elshafei because Morsy's counsel represented that he was obtaining those records himself, Tr. 227-29, and then, after

12

submitting Dr. Elshafei's letter, he represented affirmatively that the medical record was complete. Tr. 41.

The Second Circuit has squarely foreclosed Morsy's argument on this point, holding that the ALJ was under no duty to develop the record where counsel undertook to obtain additional records from a treating physician, but later notified the agency that there was "nothing further to add" to the record and "did not request the ALJ's assistance in contacting or securing evidence from" the physician. *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005); *see also Edwards v. Comm'r of Soc. Sec.*, No. 18-CV-06221, 2019 WL 1673486, at *5 (W.D.N.Y. Apr. 17, 2019) ("If Plaintiff believed additional evidence was in fact available, it was his duty to . . . at the very least, take advantage of the ALJ's offers to assist him in doing so.").

As the government points out, that is what happened here. Although counsel stated in a pre-hearing letter that he was seeking additional evidence from Dr. Elshafei, at the hearing, he said he had obtained "everything we need now" and affirmed that the record was complete. Tr. 41, 227-29. Counsel also never asked for the ALJ's assistance in securing the files. Thus, as in *Jordan*, the ALJ did not violate her duty to supplement the record with additional treatment records.

Moreover, it is not clear that the ALJ would have been required to obtain a medical opinion from Dr. Elshafei, even if Morsy's counsel had not expressly declined to seek it. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Based on this rule, the Second Circuit has rejected the categorical requirement that an ALJ must "supplement the record by acquiring a medical source statement from one of the treating physicians." *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). The *Pellam* court noted that while "SSA regulations provide that the agency 'will request a medical source statement,' . . . they also explain that the lack of a source statement will not, by itself, necessarily render the record incomplete." *Id.* at 90 n.2.[7] Accordingly, the exclusion of Dr. Elshafei's opinion from the record does not render the record incomplete.

---

[7] One district court has questioned whether an ALJ has the "power to compel plaintiff's treating physicians to work without pay to draft expert opinions or complete questionnaires." *Ambrose v. Comm'r of Soc. Sec.*, No. 19-CV-3522, 2021 WL 308276, at *2 (E.D.N.Y. Jan. 29, 2021). That question is applicable to this situation, as well.

**D. Jobs Existing in Significant Numbers in the National Economy**

As a final note, it is not clear that substantial evidence supports the ALJ's conclusion that Morsy could perform jobs existing in significant numbers in the national economy. The ALJ found, based on vocational expert testimony, that Morsy could work as a dowel inspector, plastic design applier, or a buckler and lacer. Tr. 20. The only record evidence that these jobs exist in any numbers in today's economy is the *ipse dixit* testimony of the vocational expert. *See id.* 65-69. The Court is skeptical that they do — for example, the Washington Post reported recently that a "dowel inspector" is a . . . job[] that virtually no longer exist[s] in the United States." Lisa Rein, *Social Security Denies Disability Benefits Based on List with Jobs from 1977*, Wash. Post. (Dec. 27, 2022, 10:15 AM), https://www.washingtonpost.com/politics/2022/12/27/social-security-job-titles-disabled-applicants-obsolete/). That said, "[b]ecause plaintiff has not raised this issue, the Court declines to address it *sua sponte*." *Reed v. Comm'r of Soc. Sec.*, No. 18-CV-0169, 2019 WL 4643605, at *1 (W.D.N.Y. Sept. 24, 2019).

**IV. Conclusion**

For these reasons, the Commissioner's motion for judgment on the pleadings is granted, and Morsy's cross-motion

15

is denied.  The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

      /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:     September 29, 2023
           Brooklyn, New York

16